Thank you. Please call the next case. 211-1099 James Keehn v. USF Health Counsel, you may proceed. Good morning, Your Honor. May it please the Court, my name is Jason Esmond. I am here on behalf of the Plaintiff Appellant, James Keehn. It is the Plaintiff's position that the opposite conclusion is clearly apparent in this case. The Commission determined that the Plaintiff's work activities were not a causative factor, leading to the necessity of a knee replacement. This is a repetitive, you proceeded on a theory of repetitive trauma. This was a repetitive trauma claim. The facts are not too complex. I won't state all of them. I think I can briefly overview them fairly quickly. The Plaintiff had suffered a separate knee injury in early 2004. It was a meniscal tear to his left knee. He underwent surgery in March of 2004. And by April of 2004, he was reporting no knee pain. On April 23rd, he even reported that he was 95 percent improved following his surgery. He then sought treatment on August 13th of 2004, at which time he had some swelling but no pain, and no additional treatment was recommended. Thereafter, the Plaintiff returned to his regular job. He had been a truck driver driving a semi for approximately 20 to 22 years. He returned to that job at his regular duties. Those included climbing in and out of his cab, hitching and unhitching the trailers, climbing over some freight, and also forcefully pushing down on the clutch of the vehicle approximately 80 times a day. Well, I think that we know the facts. I mean, it seems to me that it sort of boils down to a battle of the medical testimony. I mean, you've got Walsh, a Section 12 examining physician, says that it was a result of preexisting condition, that it was not as a result of the work accident. Then you've got Dr. Koh, who I believe felt there was an amended report, that the Commission quite bluntly wasn't totally impressed with the way that it came about. And then you've got the neither of the claims treating physicians opined that the need for the problems were related to the job activity. So how do you overcome the argument that it's a matter within the Commission's province to weigh the credibility of the witnesses and the weight of the testimony and the evidence? I mean, that's your hurdle here, quite frankly, isn't it? Sure. I think the Commission incorrectly applied the standard of the causative factor. I think they looked at more of a predominant factor, to tell you the truth. They looked at Dr. Koh's report, and actually the decision stated that they found that his opinion was less credible than the treating physicians'. I don't see his opinion as being consistent with the treating physicians'. The treating physicians also agreed that osteoarthritis was what the knee replacement was needed for. Koh agreed that it was due to osteoarthritis. Dr. Walsh also agreed. Well, didn't they have some specific reasons why they felt that the testimony of Walsh was more credible? Didn't Koh initially give an opinion and tied it to an accident that had already been settled, and then he subsequently issued an addendum? Wasn't the Commission a little troubled by the way they came about? They may have been. They did note that Dr. Koh had issued a separate opinion. His initial opinion had indicated that the ongoing complaints held by the plaintiff could also have been caused in part by the prior surgery. But why can't they, you know, credit Walsh's opinion over Koh's? I mean, what's wrong with that? Well, Dr. Walsh did note in his testimony that strenuous activity could aggravate an osteoarthritic condition. He merely indicated that in this case he didn't see any evidence that it did. I would argue that in the medical records the plaintiff is complaining of increased pain with his work activities. He's complaining of increased pain with climbing in and out of his cab. He's complaining of increased pain with the activity of depressing the clutch 80 times a day at his job. So I believe there is evidence in the record. Is there any finding by the Commission that this was strenuous work activity? The Commission did not state one way or another whether or not this was strenuous work activity. They merely indicated that they did not believe that the activity was the causative factor. Well, okay, so obviously they didn't find it strenuous. They may not have. Like I said, they were silent on that issue. I would, in our opinion, based on the plaintiff's testimony, depressing the clutch was difficult. He is a heavy man. Getting in and out of the cab is clearly strenuous. He's lifting his 300-some-pound body in and out of his cab. Is that why the opposite conclusion is clearly apparent? I think it's clearly apparent because the arthritis was clearly progressed from the time that he had the full-duty release and returned to work and a little over two years later when there was a recommendation for a total knee replacement. I think it is clearly apparent that the aggravation of that osteoarthritis was a causative factor. His work activities were a factor leading up to that progression. And who do we have saying that it is? Dr. Coe offered his opinion that it was a factor. And yet we have Hastings, Carlson, and Walsh who apparently are saying no. Walsh says no. Hastings and Carlson merely say that the need for the knee replacement is osteoarthritis. They do not make a statement one way or another regarding his work activities and whether or not those would have progressed that osteoarthritic condition. But I think looking at the records as they are with no pain at all and 95% improvement to pain with his work activities and need for a total knee replacement, evidence that his work activities were at least one of possible many factors that caused that arthritis to progress. Okay. But we have Walsh and we have Coe then if we just discount Hastings and Carlson. And one is saying yes, one is saying no. Isn't it in the province of the commission to more or less select one? It may not be that we would have selected that particular doctor, but what do we do here? Sure. And as I said, I think that if they're basing their opinions on the exact same thing and the same facts, I think there's no reason that they would not have the choice of selecting one or the other. I think in this case, I think Dr. Walsh overlooked some of the records that indicated the plaintiff's complaints with his work activities. I think based on that and his statement that strenuous activity could aggravate such a condition that the other decision, the decision indicating that his work activities would have been a causative factor is clearly apparent. But the arbitrator said that Coe didn't have any real accurate information when he rendered his opinion. I would argue that Dr. Walsh had no more information than Dr. Coe. Dr. Walsh in his testimony did not, I mean, yes, Dr. Walsh, did not indicate that he had any force studies indicating just how much force was applied to the clutch. He did not have any information in addition to what Dr. Coe had either. I think they had the same information regarding the work activities that were provided to them. Well, let's get rid of the doctors. I mean, do you really need doctors? Can't the commission say, hey, we take notice, we're supposed to be experts in this work environment field and represent different interests in the work environment? That's a standard shift truck 80 times from where, Rockford to St. Louis to Evansville, Indiana. Correct. That's not unreasonable. It's not, you know, I mean, could they decide that, that that's not strenuous, that it's osteoarthritis degenerating under its natural progression of the disease, no aggravation? Without the plaintiff's testimony, it's possible that they could. I believe with his testimony that this work was strenuous and this was causing an increase in his pain. I don't think they can. Thank you. Thank you, counsel. May it please the court, counsel, Natalie Romo on behalf of USF Holland. The arbitrator and commission held that the plaintiff didn't sustain a compensable accident and the circuit court confirmed. I ask that you do the same and affirm the commission decision. The issue here is whether the accident, or I'm sorry, whether the decision is against the manifest weight of the evidence. And it isn't. The commission reviewed all of the information. They reviewed the testimony. They reviewed the medical records. And they reached their own inferences and they stated it in their decision. One, they looked at the fact that both treating physicians were silent. Interestingly enough, the petitioner did have that 2004 accident. Petitioner did ask Dr. Carlson in 2004 whether he thought that the need for a total knee replacement was related to the 2004 fall. Dr. Carlson said that it wasn't and that it was based upon his osteoarthritic condition. Petitioner doesn't go back to Dr. Carlson to ask him if it's repetitive in nature. Instead, he goes to Dr. Koh. Dr. Koh on August 8th of 2007 examines petitioner and he first says in his report that the need for total knee replacement is related to the January of 2004 accident. That had been closed. So there's a mistake. Petitioner wants an addendum. He gets an addendum and Dr. Koh says, no, no, you're right. It's a result of his repetitive activities. And the commission looked at that factor and decided that Dr. Koh wasn't as credible as Dr. Walsh. The fact that petitioner has been attempting to mold the facts to suit his needs in terms of obtaining a total knee replacement, I think that that's apparent from the record and I think that the commission looked at that and took that into account. And you can tell that by the timeline in which the events occurred. He tried to get a total knee replacement from the 04 accident. Couldn't get it through his treating physician. So instead, he settles out the 2004 accident and then he files an accident and says that the accident date is really in 04. He amends that to April 5th of 06 later on to suit his needs in terms of what's going on in the medical records. But the commission looked at those medical records and he was never fined after the accident of 04. In fact, he does complain in August of 05 that he does have difficulty going up and down stairs, climbing into his truck and has occasional giving way of his knee. That's not an accident. He also complains that he has difficulty getting up out of a chair. We're not saying that the need for total knee replacement is related to getting up out of a chair or that it's from doing his job activities. The commission looked at all of that. What about your opponent's argument that Clayman testified that essentially after the March 2004 surgery, the symptoms abated and it wasn't until when he started the repetitive performance of his duties that the pain came back. So why is it not an aggravation of a preexisting condition? It's not an aggravation of a preexisting condition because the commission opined that it wasn't, first of all. But second of all, because there are facts in the record to support that. He was never 100% or even 95%, as he claims he was. He was still treating for the 04 accident, and on August 26th of 05, he was to follow up as needed. Dr. Hastings said the current symptoms are due to underlying osteoarthritis that preexisted the meniscal tear and subsequent arthroscopy from the accident of 04. He goes back March 17th of 06, and he still has complaints of pain. The doctor sends him back. He goes back on March 17th of 06, and he's still relating those complaints of pain to the 2004 accident. He never says that he has a new aggravation. So he also goes back on February 20th of 08, and he tells Dr. Carlson he had an accident in 2004, and this is where all of his pain is coming from. Petitioner himself never indicated that this was a repetitive trauma claim until we actually got to trial, and he testified. And that was one of the issues that I did have initially, was that I wasn't sure what he was alleging based upon all of these medical records, because they all seemed to point back to the 2004 accident. And the 2004 accident was already settled, and he closed out his medical rights. So you're saying that, unlike a typical repetitive trauma, there's no really manifesting dates when he was aware or should have been aware of that this, particularly 80 times you're depressing the clutch? Yes. He never states that in the medical records, and I don't see anywhere that he, until he testified, that he felt that this was a repetitive trauma injury. That's what the application alleged, but he never stated that it was from the truck. We weren't quite sure what he was alleging, again, until we actually went to trial. Because Dr. Koh's first report, he went into Dr. Koh and said, I had an accident and I fell in 2004. So Dr. Koh related it to that. The commission looked at all of these facts. They looked at the fact that, and they found interesting the fact that the doctors, the treating doctors were silent. And then they looked at Dr. Walsh's IME report. And then they looked at Dr. Koh's report, and they found him not to be credible. They didn't find him credible because he issued that second opinion. He did not know the job duties. And he is only an occupational medicine specialist, and he's not an orthopedic physician. So the commission took all of this into account and reached their conclusion, and I ask that you confirm, affirm the commission decision. Thank you. Thank you, counsel. A reply, counsel? Very briefly. Opposing counsel made a comment regarding the August of 2005 complaints. When the plaintiff was seen by Dr. Hastings in August of 2005, the doctor noted that the plaintiff might require a total knee replacement in the future if his arthritis progressed. So clearly at that time he was not finding any need for a total knee replacement. It wasn't until after he continued work and his symptoms increased and a new x-ray revealed end-stage osteoarthritis in April of 2006 that the knee replacement became a consideration. And the fact that the plaintiff was initially complaining about his pain being related to the 2004 injury is not surprising. The plaintiff is not a doctor. He had a surgery in 2004. He went back to work. His knee started to hurt again. He assumed it was from the 2004 injury. I don't think that is any indication that his repetitive work activities didn't aggravate his arthritis. Thank you. Thank you, counsel. The matter will be taken under advisement. A written disposition shall issue.